UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD T. W.,[1]

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

DECISION AND ORDER

1:22-cv-00018 (JJM)

      This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 9].[2] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [8, 9, 10], the Commissioner's motion is granted.

## BACKGROUND

      The parties' familiarity with the 1,483-page administrative record [6, 7] is presumed. Plaintiff filed an application for DIB in September 2016, alleging a disability

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right corner of the page).

beginning on June 16, 2013, due to chronic pain disorder, abnormal heartbeat, muscle spasms, and difficulty breathing.  Id. at 156, 192, 915.  This matter was previously remanded by stipulation from this court.  Id. at 993 (Case Number 1:20-cv-0012-RJA).

        The Appeals Council noted that the first Administrative Law Judge's decision did not "contain an adequate evaluation of the opinion evidence", including the November and December 2018 opinions from plaintiff's treating physician, and the consultative examiner.  Id. at 998-99.  It remanded the case to an ALJ to "[g]ive consideration to the treating source opinion" in accordance with the appropriate regulations "and explain the weight given to such evidence".  Id. at 999.  In addition, the ALJ was instructed to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations".  Id.  Thereafter, ALJ Stephen Cordovani held an administrative hearing on September 21, 2021. Id. at 935-70 (transcript of hearing).  Plaintiff, who was represented by an attorney, testified along with a vocational expert ("VE").  Id. at 941-69.

## ALJ CORDOVANI'S DECISION

        On September 29, 2021, ALJ Cordovani issued a decision concluding that plaintiff was not disabled.  Id. at 915-27.  To reach that determination, he found that plaintiff's severe impairments were major degenerative disc disease of the cervical spine and Tietze

syndrome.[3] Id. at 918.[4]  He concluded plaintiff had the residual functional capacity ("RFC") to

perform light work, with additional limitations:

> "[C]laimant has the [RFC] to perform light work . . . except
> occasional overhead reaching; cannot climb ramps and stairs;
> cannot climb ladder, ropes, or scaffolds; and no work at
> unprotected heights".

Id. at 919.


### OPINION AND OTHER EVIDENCE

Among the opinions that ALJ Cordovani considered in his analysis to arrive at the

RFC were the April 2, 2018, November 19, 2018, and December 10, 2018 opinions of plaintiff's

treating physician, Gregory Bennett, M.D.  Id. at 923-24 (referencing id. at 776-77, 780-88, and

791-95).  In his April 2, 2018 Physical Residual Functional Capacity Questionnaire,[5] Dr. Bennett

diagnosed plaintiff with left hip and knee pain.  Id. at 784.  He stated that plaintiff walks with a

cane, and his symptoms included pain, dizziness, and an unsteady gait.  Id.  He opined that

plaintiff could sit and stand for only 30 minutes at a time, and for less than two hours each in the

course of an 8-hour workday.  Id. at 785-86.  He stated plaintiff had to walk every 30 minutes for

15 minutes at a time.  Id. at 786.

Dr. Bennett's November 18, 2018 Medical Examination form states that

plaintiff's medical condition was "neck pain".  Id. at 776.  He stated that plaintiff was

---

[3]      Tietzie syndrome is "a rare inflammatory condition that affects the cartilage in your rib cage" causing "musculoskeletal chest pain and swelling at the front and top part of your chest wall".  It is "also called costochondral junction syndrome".  Cleveland Clinic, Diseases & Conditions, Tietze Syndrome https://my.clevelandclinic.org/health/diseases/23565-tietze-syndrome (last visited July 9, 2025).

[4]      Plaintiff does not challenge these findings.

[5]      This report appears in the Administrative Record twice, at pages 780-83 and 784-88.  The copy at pages 780-83, however is incomplete.  I refer herein only to the complete copy.

"moderately limited" in walking, standing, lifting, carrying, pushing, pulling, bending, and using his hands; and "very limited" on stairs or other climbing. Id. at 777.  He opined that plaintiff would be unable to work "at least 80 hours per month". Id.

His December 10, 2018 Physical Residual Functional Capacity Questionnaire is identical to his April 2, 2018 opinion, except that he crossed out the date and wrote in the new date. Id. 791-95.

Earlier in his analysis, ALJ Cordovani outlined plaintiff's treatment records, including those of Dr. Bennett from 2018. Id.  920-23.  He noted that there was no medical evidence dated earlier than May 2015, notwithstanding plaintiff's June 2013 alleged onset date. Id. at 920.  Dr. Bennett's treatment notes reflected complaints of shoulder and neck pain, in addition to mild tenderness to palpation of his shoulder, and slightly limited range of motion of the shoulder. Id. at 922.  He also had a slightly reduced strength in his deltoid and biceps, but intact strength in his triceps, wrist extension, and wrist flexion. Id.  Dr. Bennett's notes also indicated that plaintiff walked with a normal gait, was neurologically intact, and had negative Hoffman and Clonus signs. Id.  Shoulder x-rays and cervical spine x-rays and MRI showed no abnormalities. Id.

Records from Urban Family in September and November 2018 reflected largely normal findings upon examination, with some diminished strength (4+/5 to 5/5), despite plaintiff's complaints of pain and "consistently . . . limited range of motion in the musculoskeletal spine". Id.  ALJ Cordovani noted plaintiff had epidural steroid injections in April 2019 and December 2019. Id.  He also noted plaintiff's visits to the emergency department with back and chest pain in 2020. Id.  However, he pointed out that the findings upon

examination in the emergency department were normal, and plaintiff's chest x-ray was unremarkable.  Id.

ALJ Cordovani assigned "little weight" to Dr. Bennett's opinions.  Id. at 924-25. He devoted over a page of his decision to his analysis of Dr. Bennett's opinions.  Id. at 923-25. He acknowledged that Dr. Bennett had "treatment length and some degree of frequency and expertise on his side" but noted that Dr. Bennett's "treatment of claimant is not supportive of his restrictive limitations".  Id. at 924.  He summarized some of the normal physical examination findings in the medical evidence through 2018, along with the positive findings, such as "mild tenderness to palpation over the anterior aspect of the shoulder, and slightly limited shoulder range of motion".  Id.  In short, "[n]othing is noted on physical exams in any of these contemporaneous reports that would support the significant limits indicated."  Id.  He noted that "Dr. Bennett's lift, carry, manipulative and reaching limitations are inconsistent" with the findings on examination of consultative examiners David Brauer, M.D. and Hongbiao Liu, M.D. Both doctors recorded full grip strength, and intact hand and finger.  Id.  Moreover, ALJ Cordovani noted that "Dr. Bennett's treatment records do not indicate any manipulative limits on exam".  Id.  He stated that Dr. Bennett's findings in October 2018 that plaintiff "was ambulatory and neurologically intact" and in November 2018 that plaintiff "was healthy appearing and ambulatory", along with the other findings upon examination listed in his analysis "do not support the need to shift positions at will, unscheduled breaks, absences, or a complete inability to perform postural maneuvers such as twisting, stooping, crouching, climbing ladders or stairs, or maintaining balance".  Id.

ALJ Cordovani noted further that the examination findings in the record, including those of Dr. Bennett, were "inconsistent with standing limited to 30 minutes, for 15

minutes; and must change positions". In support of this statement, he cited Urban Family treatment records from 2018 noting "no edema of the lower limbs bilaterally, 4+/5 to 5/5 strength throughout, and no instability in the lower extremities". Id. He also cited May 2021 examinations from Urban Family providers documenting "normal range of motion in the musculoskeletal spine, no instability in the lower extremities, and normal gait". Id. at 925. He noted inconsistencies between Dr. Bennett's April 2018 and November 2018 opinions. In his April 2018 opinion, Dr. Bennett stated that plaintiff could sit less than 2 hours in an 8-hour workday, but his November 2018 opinion stated plaintiff had no sitting limitations, with no explanation for this change. Id.

ALJ Cordovani assigned "significant weight" to the consultative examination report of Dr. Brauer. Id. at 921. He assigned "some weight" to portions of Dr. Liu's report that he found were corroborated by the contemporaneous treatment notes and the earlier opinion of Dr. Brauer. Id. at 923.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). ). "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable

factfinder could have reached the ALJ's conclusions based on the evidence in the record".

Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v.

Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once

an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to*

*conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-

step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden

at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).


**B.**      **Did ALJ Cordovani Properly Assess Dr. Bennett's Opinions?**

Plaintiff argues the ALJ failed to give "good reasons" for assigning "little weight"

to Dr. Bennett's opinions.  Plaintiff's Memorandum of Law [8-1] at 19.   He argues that the ALJ

improperly relied upon "Dr. Bennett's own minimal record keeping habits" as a "deciding factor

in rejecting his opinion" and, further, "disregarded a significant number of positive objective

findings that lend support to Dr. Bennett's opinions".  Id. at 20-21.  Plaintiff suggests that the

ALJ "ignored Dr. Bennett's decision as Plaintiff's treating provider to administer[ ] epidural

steroid injections in April and December 2019", and ignored the positive findings recorded in

plaintiff's treatment records from his 2020 emergency department visits and his physical therapy

records.  Id. at 21-22.  Finally, plaintiff argues that ALJ Cordovani did not "appear to give any

consideration to the limitations caused by Plaintiff's costochondritis/Tietze syndrome" or to

connect his symptoms from that condition with the limitations in the RFC.  Id. at 22.

I agree with the Commissioner that ALJ Cordovani sufficiently explained his rationale and considered both the positive and negative findings reflected in the record. Commissioner's Brief [9-1] at 12-17.

First, plaintiff points to no evidence in the record or in the ALJ's decision to support his assertion that the ALJ found Dr. Bennett's record keeping habits were "minimal" or that such habits were "a deciding factor in rejecting his opinion". Plaintiff's Memorandum of Law [8-1] at 20. Instead, he attempts to minimize the ALJ's analysis and his findings: "The ALJ went on to recite a laundry list of minor objective findings that are scattered throughout the treatment record, and noted that '[n]othing is noted on physical exams in any of these contemporaneous reports that would support the significant limits indicated". Id.

To the contrary, ALJ Cordovani summarized his multi-page analysis of the findings upon examination in Dr. Bennet's treatment notes, and specifically identified which of the restrictions in Dr. Bennett's opinions were inconsistent with those findings:

> "As noted earlier, physical exams through 2018 noted mild tenderness to palpation over the anterior aspect of the shoulder, and slightly limited shoulder range of motion. However, the claimant exhibits no tenderness to palpation in the neck and intact sensation to light touch at C5 to T1. He had intact strength in the triceps, wrist extension, and wrist flexion, normal gait, and the claimant was ambulatory and neurologically intact. He had 4+ to 5/5 strength throughout, and negative Hoffman and Clonus signs . . . . Nothing is noted on physical exams in any of these contemporaneous reports that would support the significant limits indicated. In addition, the claimant has no tenderness in the neck with intact sensation. These findings are inconsistent with the ability to rarely lift and carry less than 10 pounds, occasionally hold head in static position, rarely look down or up, and turn head. . . . Dr. Bennett's treatment records do not indicate any manipulative limits on exam . . . . Further, in October 2018, Dr. Bennett noted that the claimant was ambulatory and neurologically intact . . . . In November 2018, Dr. Bennett noted that the claimant was healthy appearing and ambulatory . . . . Further, these specific findings do not support the need to shift positions at will,

> unscheduled breaks, absences, or a complete inability to perform
> postural maneuvers such as twisting, stooping, crouching, climbing
> ladders or stairs, or maintaining balance."

Administrative Record [7] at 924.

In addition, ALJ Cordovani summarized some of the findings upon examination of the consultative examiners and specifically identified the limitations incorporated into Dr. Bennett's opinions that he determined were inconsistent with those findings:

> "Dr. Bennett's lift, carry, manipulative and reaching limitations are
> inconsistent with other evidence of record.  For example, in
> November 2016, Dr. Brauer noted that the claimant had full
> strength in the upper and lower extremities, intact hand and finger
> dexterity, and full grip strength . . . .  Moreover, in May 2021, Dr.
> Liu noted intact hand and finger dexterity, full grip strength, and
> full strength, normal deep tendon reflexes, and normal muscle tone
> in the upper extremities".

Id.

Finally, the ALJ highlighted findings in plaintiff's treatment records from other providers that were also inconsistent with specific limitations incorporated into Dr. Bennett's opinions:

> "In addition, the above cited treatment records from Dr. Bennett,
> including other exam[s] in the record, are inconsistent with
> standing limited to 30 minutes before changing positions; sit,
> stand/walk for a total of less than two hours; must walk every 30
> minutes, for 15 minutes; and must change positions.  Treatment
> records in 2018 from Urban Family noted no edema of the lower
> limbs bilaterally, 4+/5 to 5/5 strength throughout, and no instability
> in the lower extremities . . . . Moreover, updated physical
> examinations from Urban Family dated through May 2021, noted
> normal range of motion in the musculoskeletal spine, no instability
> in the lower extremities, and normal gait".

Id. at 924-25.

I find that this analysis, considered as a whole, satisfied ALJ Cordovani's obligation "to construct an accurate and logical bridge between his recitation of the facts and the

conclusions he reached". <u>Lopez obo Y.T. v. Commissioner of Social Security</u>, 2020 WL 4504987, *2 (W.D.N.Y. 2020). Further, after considering ALJ Cordovani's analysis in the context of the record, I cannot find that "no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". <u>Cheatham v. Commissioner</u>, 2018 WL 5809937, *9 (W.D.N.Y. 2018).

Next, plaintiff argues that "the ALJ disregarded a significant number of positive objective findings that lend support to Dr. Bennett's opinions". Plaintiff's Memorandum of Law [8-1] at 21. Plaintiff then cites six treatment records from 2018 that record limited range of motion in plaintiff's spine. <u>Id.</u> However, the ALJ cites nearly all of these records in his analysis, noting that "[o]n exam, [plaintiff] consistently presented with limited range of motion in the musculoskeletal spine". Administrative Record [7] at 922 (*citing* <u>id.</u> at 592, 579, 581, 586, 576). Plaintiff argues that ALJ erred by failing to mention these findings "in his critique of Dr. Bennett's opinion". Plaintiff's Memorandum of law [8-1] at 21. However, he was not required to do so.

To determine whether the ALJ violated the treating physician's rule, the ALJ's decision must be "read as a whole in the context of the record before him." <u>Green v. Saul</u>, 2019 WL 2996502, *8 (S.D.N.Y. 2019) (*report and recommendation adopted sub nom.* <u>Green v. Berryhill</u>, 2019 WL 2992088 (S.D.N.Y. 2019). He is not required to repeat parts of his analysis elsewhere in his opinion in order to satisfy the substantial evidence standard. <u>Anastasia F. v O'Malley</u>, 2024 WL 1717094, *4 (N.D.N.Y. 2024) ("the ALJ's decision should be read as a whole, and it would indeed create needless formality to require the ALJ to repeat his analysis to satisfy this requirement"). Moreover, an ALJ is never required "explicitly to reconcile every conflicting shred" of medical evidence. <u>Miles v. Harris</u>, 645 F.2d 122, 124 (2d Cir. 1981).

"It is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision."  Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).

In his analysis of Dr. Bennett's opinion, ALJ Cordovani stated that "as noted earlier, physical exams through 2018, noted mild tenderness to palpation over the anterior aspect of the shoulder, and slightly limited shoulder range of motion".  Administrative Record [7] at 924.  He then went on to contrast these findings with others made upon examination that suggest plaintiff retained the functional ability to perform light work, with some additional limitations.  Id.   From the ALJ's decision as a whole, it is possible to glean his rationale in assigning "little" weight to Dr. Bennett's various opinions that plaintiff had significant and work-preclusive functional limitations as being unsupported by his treatment records, or any other medical evidence.

Plaintiff also faults ALJ Cordovani's analysis because "he ignored Dr. Bennett's decision as Plaintiff's treating provider to administer[ ] epidural steroid injections in April and December 2019".  Plaintiff's Memorandum of Law [8-1] at 21-22.  Although plaintiff notes that the ALJ acknowledges these treatments, "he failed to connect them with Dr. Bennett".  Id. at 22.  However, ALJ Cordovani specifically cites the operative report for each procedure, both of which identify Dr. Bennett as the attending physician.  Administrative Record [7] at 922 (citing id. at 1129-1131 and 1370).

"Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).  Plaintiff does not point to anything in the operative reports for the procedures, or elsewhere in the record, that suggests he had any functional limitations due to the injections.  The record indicates that the plaintiff's functional abilities improved following the injections and related

physical therapy.  Physician's Assistant Collin Krasowski reported in his April 7, 2020, treatment note that plaintiff was "also having low back pain with radiation into his legs but he recently had an injection and with that in combination of physical therapy, he is doing much better, especially with his ambulation".  Id. at 1214.  During the same visit, plaintiff "denie[d] any gait instability . . . or balance issues".  Id.  Therefore, to the extent that ALJ Cordovani erred when he did not explicitly state that the injections were performed by Dr. Bennett, such error was harmless on this record.

Next, plaintiff argues that remand is necessary because of omissions in the ALJ's decision.  He argues the ALJ incorrectly characterized the examination findings in plaintiff's emergency department records as "normal" when there were some abnormal findings upon examination, did not state the "significant number of positive objective findings in Plaintiff's physical therapy records," and also failed to "give any consideration to the limitations caused by Plaintiff's costochondritis/Tzietze syndrome – a condition that caused Plaintiff to seek emergency treatment multiple times throughout the relevant period".  Plaintiff's Memorandum of Law [8-1] at 22; *citing* Administrative Record [7] at 1199, 1205.  He notes that the ALJ failed to discuss "positive objective findings in Plaintiff's physical therapy records".  Id.

I agree with plaintiff that ALJ Cordovani did not explicitly acknowledge the positive findings of "CVA tenderness", and "vertebral tenderness" in the March 1, 2020 emergency department record ([7] at 1199) and the "decreased range of motion in both arms" noted in the November 24, 2020 emergency department records (id. at 1205).  He also did not discuss the specific findings such as "tightness", "tenderness" and "muscle spasms" present in the physical therapy records.  Plaintiff argues that "[t]his lack of discussion of Plaintiff's severe impairment suggests that the ALJ failed to consider if many of Dr. Bennett's limitations were in

fact made in light of Plaintiff's costochondritis/Tzietze syndrome, and not his back issues".
Plaintiff's Memorandum of Law [8-1] at 23.

Although ALJ Cordovani did not explicitly quote the notations highlighted by
Plaintiff, it is apparent that he considered the limitations and symptoms identified by the plaintiff
because he refers to similar findings elsewhere in his opinion, as they were incorporated into
other treatment notes.  *See* Administrative Record [7] at 920 (noting "mildly limited left shoulder
range of motion"); 921 ("limited right shoulder range of motion" and "limited range of motion in
the left shoulder and tenderness", "slight left shoulder tenderness"); 922 ("mild tenderness to
palpation over the anterior aspect of the shoulder", "slightly limited shoulder range of motion",
"limited range of motion in the musculoskeletal spine", "tenderness to palpation in the chest
wall"); 923 ("chest tenderness"); 924 ("mild tenderness to palpation over the anterior aspect of
the shoulder, and slightly limited shoulder range of motion").

Further, it is apparent that ALJ Cordovani considered plaintiff's
costochondritis/Tiietze syndrome throughout his decision.  That condition is defined by the
Cleveland Clinic as "a rare inflammatory condition that affects the cartilage in your rib cage. It
causes musculoskeletal chest pain and swelling at the front and top part of your chest wall".[6]   It
is "also called costochondral junction syndrome".  Id.  The ALJ found that it was one of
plaintiff's severe conditions.  Id. at 918.  He referenced plaintiff's treatments for chest and rib
pain repeatedly in his analysis supporting the RFC.  *See id.* at 920 ("claimant presented to the
Erie County Medical Center emergency room with complaints of chest pain . . . He received a
diagnosis of non-anginal chest pain and costochondritis"; "complaints of rib pain"; "complaints

---

[6]        Available at https://my.clevelandclinic.org/health/diseases/23565-tietze-syndrome (last visited
July 9, 2025) .

of left side rib pain"; "claimant presented to cardiologist Dr. Kenneth Gayles for evaluation of chest pain"; "no complaints other than left chest and shoulder pain"; "mildly limited left shoulder range of motion, and left rib tenderness"; "limited range of motion in the left shoulder and tenderness of costochondral junction"), 921 ("treatment records in 2016 consistently noted limited range of motion in the left shoulder and tenderness of the costochondral junction consistent with problems reaching overhead"; "claimant presented to the emergency department with chest pain.  On exam, he had slight left shoulder tenderness"); 922 ("left chest pain"; "updated notes for Dr. Gayles noted complaints of chest pain and tenderness"; "on three occasions in 2020, the claimant presented to the emergency department with chest and back pain"); 923 ("presented again to the emergency department with chest pain and discomfort.  On exam, he had chest tenderness").

Further, ALJ Cordovani incorporated into the RFC a limitation to "occasional overhead reaching" to accommodate the limited range of motion in plaintiff's shoulder.  Plaintiff does not identify any treatment note in the record that demonstrates – or even suggests – that plaintiff's Tietze syndrome resulted in the significant functional limitations incorporated into Dr. Bennett's opinions or that plaintiff sustained any functional limitations related to the Tietze syndrome.  Nor does plaintiff state what other limitations might have been appropriate.

ALJ Cordovani adequately explained his treatment of all the opinions in such a way that one could understand why he made the determination he did, and upon which evidence.  I find that his analysis, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T., supra.  Although there is evidence in the record that could support different findings, "there is substantial evidence to support the ALJ's decision.  The Commissioner, not the Court, is

responsible for weighing conflicting evidence." <u>Pagan o/b/o Delgado v. Barnhart</u>, 409

S.Supp.2d 217, 220 (W.D.N.Y. 2006).  Plaintiff did not sustain his burden "to prove a more

restrictive RFC than the RFC assessed by the ALJ".  <u>Beaman</u>, <u>supra</u>.

### CONCLUSION

   For these reasons, the Commissioner's motion for judgment on the pleadings [9]

is granted and the plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: July 9, 2025

   /s/ Jeremiah J. McCarthy 
JEREMIAH J. MCCARTHY
United States Magistrate Judge
